THE STATE, JACOB S. YOUNG, PROSECUTOR, v. LEWIS PARKER, JR., RECEIVER OF TAXES.

1. The prosecutor, being called on·by the assessor of his ward, and furnished with a blank to be filled up with the particulars of his property, under oath, told the assessor that he would see his attorney, and if it was right, &c., he would fill up the blank and return it to the assessor's office; *held*—that the assessor, hearing nothing further from the prosecutor, was justified, by the provisions of the eighth section of the tax law of 1866, in assessing his property at its highest estimated value.

2. The commissioners of appeal could not lawfully reduce the assessment thus made without being satisfied that the prosecutor did not refuse to be sworn, &c., nor unless he satisfactorily proved what was the true value of all his taxable property.

3. The second section of the act of March 26th, 1852, does not require this court to decide, in the first instance, whether the estimate of the assessor was too high or not.

4. This being a mere question of value, depending upon evidence, will not be entertained here, except by way of review, after appeal to the commissioners and their judgment upon it.

State, Young, pros., v. Parker, Receiver.

On *certiorari*.   In matter of taxation.

Argued before BEDLE, WOODHULL, and SCUDDER, Justices.

For prosecutor, *A. G. Richey.*

For defendant, *G. D. W. Vroom.*

WOODHULL, J.   It appears from the testimony in this case that the assessor of the Third ward of the city of Trenton, for the year 1868, called on the prosecutor, who was then residing in that ward, and left with him the usual blank statement, informing him that if properly filled up and sworn to, and returned to the assessor's office within five days, it would be in time.

The prosecutor testifies that the blank was filled up with the amount of his personal property—$1,000—and also the amount of his indebtedness to persons residing in the state—$1,500—for which he claimed a deduction, and that the statement, with the proper affidavits, was taken by himself, within the time limited, and left with Mr. McKeever, at whose house the assessor had his office, and who promised to hand it to the assessor when he came in.   Mr. McKeever states that he has no recollection of this, but says that such papers were frequently left with him for that purpose, and that all so left with him, as far as he can remember, were handed by him to the assessor.

The assessor is very positive that no statement and affidavit, purporting to come from the prosecutor, were ever received by him from any one.   He says, further, that before he closed his books he made special inquiry, both of Mr. McKeever and his wife, whether the prosecutor had left any paper for him, and that they looked and could not find any, and that he then made the assessment complained of, putting down the prosecutor's personal property at $5,000.

The prosecutor states in his deposition that he appealed from this assessment, and stated his case to the commission-

ers. But it does not appear that he delivered to them any sworn statement in writing, nor even that he made his statements before them under oath.

The first reason assigned for setting aside the assessment is, that it was made without authority of law.

The eighth section of the act of April 11th, 1866, makes it the duty of the assessor to ascertain, by diligent inquiry, and by the oath or affirmation of the persons to be assessed, the names of all the persons taxable in their respective townships or wards, and the actual value of all the property taxable therein; and in case any inhabitant shall refuse to swear or affirm and answer in regard to all the particulars of his property, when required by the assessor, such property is to be estimated "at the highest value the assessor has reason to suppose it may be placed." *Nix. Dig.* 952, § 8.* If the prosecutor refused to swear, &c., in the sense of the eighth section, or if the assessor was justified in believing that he refused, then it was clearly the duty of the assessor to assess the property of the prosecutor at its highest estimated value, as appears to have been done in this case.

The testimony of the prosecutor himself shows that while he did not absolutely refuse to swear, &c., when requested by the assessor, he only consented to do so conditionally.

He says: "I was called on by the assessor of the Third ward for my tax return; he left me a blank to fill up; he said I would have to pay tax for the property I had in the city of Trenton; I told him I had been taxed in Hamilton township, but, before I went further, I would see my attorney, and if it was right for me to pay tax here, I would fill up the blank and return it to his office; he then said he would give me five days to make the return under oath, and if not done, he would put down what he thought was right." Under such circumstances, failing to hear anything further from the prosecutor until after the time limited for closing the assessment had expired, what else could the assessor reasonably suppose than that, having consulted his attorney, the prosecutor had determined to test his liability to be taxed

*Rev., p. 1153, § 67.

in the city of Trenton, and, for that reason, refused to make any return? The assessor certainly cannot be charged with knowledge of a return which does not appear to have been ever delivered to him, or to any one authorized by him to receive it.

The objection to the assessment as being without authority of law is, therefore, not sustained.

The second and third reasons amount to the same thing, namely, that the assessment was excessive; and the fifth is, that the commissioners of appeal refused to correct it.

Whether the assessment was excessive or not, was a question clearly within the province of the commissioners to decide. But by the eighth section above referred to, they are expressly forbidden to reduce the estimate of the assessor unless satisfied that the person assessed did not refuse to be sworn, &c., and unless such person shall satisfactorily prove, by his own oath or otherwise, what was the true value of all his taxable property. If the commissioners, therefore, refused to reduce the assessment, as the prosecutor testifies that they did, the fair inference is, that it was either because they thought the estimate of the assessor a fair one, or because the prosecutor failed to satisfy them that he had not refused to be sworn, or because he failed to prove what was the true value of all his taxable property. If the evidence produced by the prosecutor was insufficient to satisfy the commissioners in regard to either one of these essential matters, they were not only justified in refusing, but were bound to refuse, any reduction of the assessment. All the information furnished us in regard to the evidence before the commissioners is found in the deposition of the prosecutor, who says: "I appeared before the commissioners of appeal when they met, and appealed from this assessment; I stated before them substantially the same facts as I have given in here on this examination." There is nothing here to show that the prosecutor was sworn, or that he offered to prove, by his own oath or otherwise, what was the true value of all his taxable property. We cannot say, therefore, that the deci-

sion of the commissioners in this matter, supposing it to be properly before us, was not in strict conformity with the act.

But no judgment or order of the commissioners, refusing to reduce the estimate of the assessor, or what comes to the same thing—affirming the assessment—is brought up for review by the writ, and the question arises whether, as this case is presented to us, we are bound to decide whether this assessment is excessive or not. By the act of 1846, (*Nix. Dig.* 945, § 49,*) such questions were to be submitted to the commissioners of appeal, and their decision was final and conclusive. The act of March 26th, 1852, section second, provides that "if it shall appear to the satisfaction of any court wherein any *certiorari* is or may be brought, that the amount or value of taxable property for which any person is assessed is too great, such court shall amend such assessment." Does this mean that any person assessed may bring his assessment directly into this court for the purpose of determining whether it is excessive or not, without first applying to the commissioners of appeal for relief? Or did the legislature intend only to give to this court the power of reviewing the decisions of commissioners of appeal upon such questions? In the case of *The State* v. *Danser*, 3 *Zab.* 553, Potts, J., delivering the opinion of the court, says : "Upon a mere question of value, depending upon evidence, the mode of redress is by application first to the commissioners of appeal."

This must have had reference to the act of March 26th, 1852, for, before the passage of that act, the only mode of redress upon such a question was by application to the commissioners, and their judgment was final.

The construction which seems to have been adopted by this court in the case just cited, I take to be the true one.

The question whether the estimate of the assessor was too high, upon which the opinion of the court is desired in this case, is "a question of mere value, depending upon evidence." To entitle the prosecutor to a decision of that question here, he must first have made application to the commissioners—

---

*Rev., p. 1148, § 48.

that is, he must have taken his appeal from the assessor to the commissioners, and obtained their judgment upon it. If adverse to him, he might then, under the act just referred to, have brought up here for review the judgment of the commissioners, and the evidence upon which it was founded.

As the case now stands, I think the prosecutor can have no relief in this court, and that the assessment must be affirmed.

Assessment affirmed.

BEDLE and SCUDDER, Justices, concurred.

CITED *in State, Trumbull, pros.,* v. *City of Elizabeth,* 10 *Vr.* 250.